### Frank H. Jones, Trustee, Appellant, v. Louis W. Parker et al., Appellees.

### Gen. No. 21,328. (Not to be reported in full.)

Appeal from the Superior Court of Cook county; the Hon. WILLIAM E. DEVER, Judge, presiding. Heard in this court at the March term, 1915. Affirmed. Opinion filed January 3, 1916.

### Statement of the Case.

Action for deceit by Frank H. Jones, trustee in bankruptcy of the estate of Benezette Williams, and Charles MacRitchie, copartners as Williams & Mac-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Ritchie, plaintiff, against Louis W. Parker and Livingston Dickason, surviving partners of the firm of Dorwin & Company (composed of defendants and W. E. Dorwin), defendants.

From a judgment of *nil capiat,* entered on a directed verdict, plaintiff appeals.

The following facts appear:    A certain railroad company was engaged in constructing a railroad over the Atchafalaya River in Louisiana.    On each side of the river was a swamp through which an embankment three or four miles long had to be constructed to elevate the tracks.    This embankment on the west side of the river extended from the high ground at engineer's station 829 to the west bank of the river, engineer's station 1054.    The embankment on the east side extended from station 1059 at the east bank of the river east to station 1707, where it reached the high ground.    October 9, 1907, Dorwin & Company, entered into a contract in writing with the railroad company with reference to the construction of the embankments.    It provided that Dorwin & Company, should, at the price of thirty cents per cubic yard, complete the work on the west side of the river in one hundred and twenty days, and contained the following provision as to the work on the east side of the river:

"It is also understood and agreed that the company may, at its option, extend this contract at the same prices and on the same terms and conditions, except as to time, to cover the filling in of the temporary trestles from the Atchafalaya River (station 1059) to the east edge of the Atchafalaya swamp (station 1707).    The right is reserved to the company, however, to seek bids for said work, and in event the said bids so received shall be more favorable than the prices in this contract, then and in that case the contractor herein shall have the preference on the work between station 1059 and station 1707 at the prices and terms thus obtained."

Trestles had been constructed west of the river be-

fore October 9, 1907, but no bridge over the river had been built and little or no trestle work had been built east of the river. It was originally intended to build the entire embankment by filling from trestles. The contract of October 9th provided for the filling in of the temporary trestles between stations 829 and 1054, and it appears from the provisions of the contract in relation to the work on the east side of the river, above quoted, that it contemplated the construction of the embankment on that side of the river by filling in from trestles from the river to the east edge of the swamp.

The declaration alleged that in four particulars Dorwin & Company misled Williams and MacRitchie: First, that Dorwin & Company represented that their contract with the railroad company covered the work on both sides of the river, whatever engineering method might be employed; second, that Dorwin & Company represented that the rate of progress in the construction contract had been waived; third, that Dorwin & Company represented that the plant in operation on the work was of sufficient capacity to meet the requirements of the contract; and, fourth, that Dorwin and Company represented that the equipment in use by them was in good condition and repair and suitable for the purposes intended. When the formal contract between Williams and MacRitchie and Dorwin & Company was signed by Williams, he was fully advised that the railroad company would insist on the rate of progress called for by the contract.

There was no evidence that any representations were made by Dorwin & Company as to the sufficiency of the equipment or of the plant. It appeared from the evidence that Williams and his firm were fully informed as to the sufficiency of the equipment and the plant when they entered into the contract with Dorwin & Company.

The point relied on by plaintiff is the alleged mis-

representations by Dorwin & Company to Williams and MacRitchie as to the contract with the railroad company. The railroad company was about to construct a railroad across the Atchafalaya River and the adjoining swamp on either side. It had constructed a trestle across the swamp on the west side of the river and entered into a definite contract involving a large outlay of money for an early completion of the work west of the river. Dorwin & Company had a contract with the railroad company which gave them control of the east side work at a definite price if there was no lower bidder; if there was, they would be compelled to meet that bid to secure the work. They were willing to take that risk and fix a price with Williams and MacRitchie, whatever the price with the railroad company might be, and Williams testified that they offered him the entire work at twenty-five cents a yard. Later, by reason of a suggestion by Williams, the railroad company's engineers were led to consider a plan for doing the east side work by dredging. This was the only plan Williams would consider for the east side work; and he testified that he was assured by Dorwin and by Parker that if the dredging plan was accepted, Dorwin & Company would still control the east side work.

The contention of plaintiff appeared to be that Dorwin & Company's contract with the railroad company did not include the east side work; that they represented to Williams and MacRitchie that it did, and that this was a material misrepresentation as to a material particular, whereby Williams and MacRitchie were misled and induced to alter their position to their disadvantage.

The offices of the railroad company were in New York, and Coleman was the consulting engineer and Cushing his superior, and they had their offices in New Orleans. They could only recommend but could not make a contract without the authority of the of-

ficials in New York. This was known to Williams. In February, 1908, Williams and Dorwin went to the river to see the construction of the embankment in progress on the west side of the river, and then went to Chicago by way of New Orleans. After long consultation with Williams, Dorwin submitted to Coleman a proposition for the work on the east side of the river based on the dredging plan at forty-two cents a yard. Coleman said that he would recommend the change to dredging and the acceptance of the proposition. Williams knew that the proposition to do the work on the east side by dredging had not been accepted by the railroad company. His son Carl wrote him February 28th that Dorwin had not got anything out of Cushing except that he was favorable, that the matter had to go to Harriman for decision. Williams testified that Dorwin told him March 3rd, that "they" had decided to do the work by dredging, but "they" were not ready to enter on it, had not got the authority to do it: and further testified as follows:

"Q. Did he say the price had been agreed upon? A. No, sir, he did not. He said it had not been agreed upon.

"Q. Did he say the time for the work had been agreed upon? A. No; that was an element that was left open.

"Q. Both the dredging and the price was left open? A. The time for dredging it.

"Q. And the price? A. And the price.

"Q. So that you understood from his conversation that it remained to make a contract with the railroad company the east side work, did you? A. Yes, sir.

"Q. And you understood that on March 3rd? A. Yes.

"Q. And you understood that throughout the negotiations? A. Yes, sir.

"Q. That the railroad company and Dorwin & Company never at any time had any contract complete in terms covering the work east of the river? A. Yes, I understood it that way."

March 14, 1908, Williams made to Dorwin & Company, a written proposition for the work on the west side of the river, by which he agreed to complete the work Dorwin & Company had begun on that side of the work, and that he would have a formal contract prepared as soon as he ascertained whether the work was to be done by Williams and MacRitchie or by Williams himself and others. This proposition was accepted by Dorwin & Company. On the same day Williams submitted a proposition for the work on the east side of the river in which is the following statement:

"Referring to your proposition which you submitted to Morgan's Louisiana & Texas Railroad & Steamship Company for making the embankment for said railroad between stations 1059 and 1656 on the Baton Rouge Branch in the swamp east of the Atchafalaya River, I submit to you the following proposition: In case your proposition is accepted by said railroad company, I will do the work for you for 33 cents per cubic yard measured in embankment; payments to be made to me as and when received by you from the said railroad company. I will have a formal contract covering the foregoing and containing provisions similar to those contained in your contract with the railroad company entered into either by the firm of Williams & MacRitchie or by myself and others as soon as I can determine whether said contract will be undertaken by said firm or by myself and others."

The formal contract for the work on the west side of the river was signed June 2nd and bears date April 1st and contains the following provision:

"The parties of the second part" (Williams and MacRitchie) "hereby agree to complete the work required by said contract beginning on this date, in accordance with said specifications Exhibit 'A' except as to the time within which said contract shall be completed, and with respect thereto said parties of the second part agree to complete the balance of the work required by said contract at the same rate required

by said specifications, to-wit: about 2400 cubic yards on each working day hereafter.''

The specifications Exhibit ''A'' are for the work on the west side of the river only. They provide that the ''work shall be begun within 30 days after notification by the engineer, and shall be completed, between points covered by the contract, within 120 working days thereafter; that the quantities are approximately as follows: Station 829, Atchafalaya River, 287,434 cubic yards. The formal contract for the work east of the river which Williams refused to sign, contains the following:

''Whereas the said parties of the first part (Dorwin & Co.) have submitted to said railroad company a proposition for making the embankment for said railroad between stations 1059 and 1655 with a dredge, thus avoiding the necessity for the construction of temporary trestles at a price of 42 cents per cubic yard measured in embankments, which said proposition said railroad company now has under consideration; and whereas the parties of the second part (Williams and MacRitchie) desire to do the work of filling in the temporary trestles or constructing the embankment, as the case may be; Now, Therefore, it is hereby agreed by and between the said parties as follows: In case the proposition of the parties of the first part for constructing the embankment is accepted by said railroad company, the parties of the second part shall do the work,'' etc.

Williams testified that Dorwin may have shown him the specifications in January; that ''at any rate if he did not show me the specifications he gave me a full synopsis of them as to the rates of progress, etc., so that before March 14th, I understood that the work on these specifications and the rate of progress was to be 2400 yards a day.''

Williams further testified as follows:

''Q. On March 14, when you signed the two proposals which were in evidence, did you believe that

the railroad company had accepted the proposition of Dorwin & Company to do the work east of the river by dredging? A. Not for forty-two cents, no, sir; I understood that they had not accepted that.

"Q. You understood they had not accepted the proposition? A. Had not accepted it.

"Q. Did you not believe at any time during the entire history of these negotiations that the railroad company had accepted Dorwin & Company's proposal to do the work east of the river by dredging? A. I never did.

"Q. You never believed it? A. I never did.

"Q. You never believed it? A. I never understood it that they had." ·

Williams testified that Dorwin told him February 29th that the railroad company had decided to do the work east of the river by the dredging principle. "He did not say the price had been agreed on. If I remember, he did not mention whom it had been accepted by."

The declaration alleged that Williams and Mac-Ritchie would not have undertaken the work on the west side of the river for twenty-five cents per cubic yard had they not believed the alleged representations of the defendants that they had a valid and binding contract for the entire work on the west and east sides of the river, comprising approximately 900,000 cubic yards.

G. E. M. Pratt and John S. Miller, for appellant.

George G. King, for appellees.

Mr. Justice Baker delivered the opinion of the court.

### Abstract of the Decision.

1. Fraud, § 19*—*when representation of intention not fraud in law.* The rule that a false representation as to a matter of intention not amounting to a matter of fact is not fraud in law, even

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

though the transaction is influenced thereby, applies to the representation of an intention by a third party as well as to a representation of defendant's intention.

2. FRAUD, § 5*—*when knowledge of falsity of representation essential.* In an action for deceit, the evidence must show that the representation alleged to be false was in fact false; if false, that it was known to be false by the person making it.

3. FRAUD, § 115*—*when evidence insufficient to show actionable misrepresentation.* In an action of deceit against the surviving partners of a firm, evidence examined and *held* insufficient to show actionable misrepresentation by the firm relied on by plaintiffs, which was the inducing cause of the loss sustained.